| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 1:15-cr-32-HSM-SKL |
| ) | |
| KEITH WARREN ) | |

**REPORT AND RECOMMENDATION**

Defendant Keith Warren ("Defendant") filed a "Motion to Suppress Evidence and Request for a Hearing Pursuant to *Franks v. Delaware*" [Doc. 20], with supporting exhibits [Docs. 20-1, 20-2, 20-3, 20-4, 21] and a memorandum of law [Doc. 27-1]. Plaintiff United States of America (the "Government") filed a response in opposition to the motion [Doc. 33]. Defendant filed a reply [Doc. 34] and this matter is now ripe. For the reasons stated herein, I **RECOMMEND** that Defendant's request for a *Franks* hearing and motion to suppress be **GRANTED IN PART AND DENIED IN PART**.

I. BACKGROUND

Over the course of a week in January of 2010, Meigs County Sheriff's Department Detective Keith Kile ("Detective Kile") obtained from Meigs County General Sessions Court Judge Jayne Crowley two warrants for separate searches of Defendant's residence. The first warrant, the January 21, 2010 search warrant (the "First Warrant"), authorized the search for and seizure of items evidencing violations of Tenn. Code Ann. §§ "39-12-204 (RICO), 39-14-903 (Money Laundering), 39-17-417, 39-17-408 (Tennessee Drug Control Act of 1989)" [Doc. 20-1

at Page ID # 176].[1]  The second warrant, the January 25, 2010 search warrant (the "Second Warrant"), authorized the search for and seizure of items related to child pornography [Doc. 20-2].[2] On March 24, 2015, more than five years after the execution of the search warrants at issue herein, Defendant was charged in a two-count indictment with receipt and possession of child pornography [Doc. 1].

### A. First Warrant

As relevant to the instant motion, in addition to detailing Detective Kile's extensive knowledge of and experience with narcotics investigations, the "four corners" of the First Affidavit allege the following probable cause:

> The affiant has received information from a confidential source who has in the past cooperated with law enforcement and whose cooperation has resulted in arrests and convictions of subjects for the possession, sale, and distribution of various types of controlled substances. This confidential source has also provided information and provided intelligence, as well as make [sic] covert purchases of controlled substances from Keith Warren located at 220 Dogwood Drive, Ten Mile, TN 37880.
>
> The aforementioned confidential source has been able to covertly purchase oxycodone from Keith Warren in Meigs County. These purchases having occurred in Meigs County on January 18th, 2010 and January 19th, 2010 at 220 Dogwood Drive, Ten Mile, TN 37880.
>
> This affiant has also received information from a confidential informant who has previously provided information that the affiant had corroborated; and who is known to and had admitted using

---

[1] Attached to Defendant's motion as a collective exhibit are the January 21, 2010 Affidavit for Search Warrant ("First Affidavit"), the First Warrant, and a return for the initial search of Defendant's residence for evidence related to illegal distribution of controlled substances [Doc. 20-1].

[2] Also attached to Defendant's motion as a collective exhibit are the January 25, 2010 Affidavit for Search Warrant ("Second Affidavit"), the Second Warrant, and the return for evidence related to child pornography [Doc. 20-2].

> Oxycodone Hydrochloride, a schedule II narcotic. The confidential informant had admitted to using Oxycodone Hydrochloride within the past two years providing the confidential informant with knowledge of how Oxycodone Hydrochloride is packaged and the[n] sold and how those engaging in the illegal activity of possession and sale of the aforementioned prescription narcotic obtain and sell said Oxycodone Hydrochloride.
>
> The aforementioned confidential informant has purchased pills from Keith Warren at the above described residence within the past seventy-two hours at the direction of the affiant. The pills were identified by this affiant as Oxycodone Hydrochloride, a schedule II narcotic. The purchase of Oxycodone Hydrochloride by the confidential informant was corroborated through audio surveillance and made under the supervision and direction of the affiant.

[Doc. 20-1 at Page ID # 182-83]. The above paragraphs will be referred to respectively herein as the first and second paragraphs and the third and fourth paragraphs of the First Affidavit.

### B. Second Warrant

The Second Affidavit, which states that Detective Kile was assisted by another detective with extensive experience in, and knowledge of, the investigation of sexual exploitation of minors, alleges the following probable cause:

> While in the process of effecting a search warrant of the house and property belonging to Keith Warren several compact disks (cd's), dvd's and diskettes that were "homemade" (they were not commercially labeled) were found. Pursuant to the search warrant, two CD's were viewed on a computer. Your affiant was able to view a folder containing twenty one (21) images of a young child, which your Affiant believes to be younger than thirteen years old, said images your affiant believes to be in violation of TCA § 39-17-1004. On that same CD there was a video of another child, also younger than thirteen years, which your Affiant believes to be in violation of TCA § 39-17-1004.

[Doc. 20-2 at Page ID # 191-92].[3] The above paragraph will be referred to herein as the probable cause paragraph of the Second Affidavit. The computer examination report and case summary report for evidence seized from Defendant indicate tens of thousands of images and hundreds of videos of minors (from infants to teenagers) engaged in sex acts with adults were located on Defendant's computer and related media [Docs. 17-5, 17-6].

## II. STANDARDS

When a search warrant is obtained by state officers from a state court, but the evidence seized is ultimately to be used in a federal prosecution, the validity of the warrant is examined under the standards of the Fourth Amendment. *See, e.g.*, *United States v. Wright,* 16 F.3d 1429, 1437 (6th Cir. 1994). The Fourth Amendment states, *inter alia*, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Probable cause to conduct a search exists when there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The determination of probable cause is made by evaluating the information contained within the four corners of the affidavit supporting the warrant. *See, e.g.*, *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc) ("The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."). An affidavit supporting the issuance of a search warrant should be reviewed in a commonsense,

---

[3] Tenn. Code Ann. § 39-17-1004, addressing aggravated sexual exploitation of a minor, states: "It is unlawful for a person to knowingly promote, sell, distribute, transport, purchase or exchange material, or possess with the intent to promote, sell, distribute, transport, purchase or exchange material, that includes a minor engaged in: (A) Sexual activity; or (B) Simulated sexual activity that is patently offensive."

4

rather than hypertechnical, manner to determine probable cause. *United States v. Johnson*, 351 F.3d 254, 258 (6th Cir. 2003).

Great deference is accorded to the issuing judge's determination of probable cause. *See, e.g.*, *United States v. Calloway*, 116 F.3d 1129, 1132 (6th Cir. 1997) (holding the issuing judge's determination of probable cause should not be reversed absent clear error). "[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton,* 466 U.S. 727, 728 (1984) (per curiam).

Information regarding illegal activity that comes to the attention of law enforcement through a confidential informant can serve as the basis for probable cause, as long as the reliability of the confidential source is established as part of the totality of the circumstances. *See United States v. Jones*, 159 F.3d 969, 974 (6th Cir. 1998); *see also United States v. Helton,* 314 F.3d 812, 819 (6th Cir. 2003). In determining the reliability of informant information, the issuing magistrate, and the reviewing court, "must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances . . . ." *Helton,* 314 F.3d at 819 (citing *Gates,* 462 U.S. at 238). An affidavit "must state facts supporting an independent judicial determination that the informant is reliable," but the facts need not be stated in any particular form. *United States v. McCraven,* 401 F.3d 693, 697 (6th Cir. 2005). Independent corroboration of the informant's information is not required when the issuing magistrate is provided with assurances that the informant is reliable, such as a prior record of providing reliable information. *See*, *e.g., United States v. Brown*, 732 F.3d 569, 574 (6th Cir. 2013) (Sixth Circuit precedent "clearly establishes that the affiant need only specify that the

confidential informant has given accurate information in the past to qualify as reliable.") (quoting *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001).

**III**.   **ANALYSIS**

Defendant requests a *Franks* hearing and argues the fruits of both the first and second search must be suppressed because the First Affidavit contains false information from the affiant.[4]  Defendant also argues for suppression of the evidence from the second search based on a violation of the Fourth Amendment, claiming that the Second Affidavit does not establish probable cause for the Second Warrant and ensuing search.  It appears to be uncontested that Defendant had an expectation of privacy with respect to both searches.

    **A.**    **First Affidavit**

        **1.**    *Franks* **Hearing**

To be entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), commonly referred to as a *Franks* hearing, "based on an affirmative misstatement, a defendant must 'make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause.'"

---

[4] Defendant is not charged in federal court with any alleged drug-related criminal activity; thus, it is not necessary to address the alleged drug distribution evidence seized during the execution of the First Warrant herein.

6

*United States v. Neal*, 577 F. App'x 434, 450 (6th Cir. 2014) (alterations in original) (quoting *Franks*, 438 U.S. at 155-56).[5]

As elaborated by the Sixth Circuit,

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth. He must accompany his allegations with an offer of proof. Moreover, he also should provide supporting affidavits or explain their absence.

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citations omitted). Significantly, in order to be entitled to a *Franks* hearing, the defendant must make a substantial preliminary showing that the affiant, rather than the informant, deliberately or recklessly included false information in the affidavit. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir 2003) (citing *Franks*, 438 U.S. at 155-56).

Defendant argues that Detective Kile deliberately or recklessly included false information in the First Affidavit indicating that he had information from two separate confidential informants. Defendant submitted several affidavits and made a sufficient offer of proof to support his contention that there was only one confidential informant. Indeed, the Government concedes that there was only one confidential informant. The Government contends, however,

---

[5] An affiant's omission of material information from his or her supporting affidavit may also provide a basis for a *Franks* hearing, but "there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *Neal*, 577 F. App'x at 450 (quoting *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008); *see also United States v. Carpenter*, 360 F.3d 591, 596-97 (6th Cir. 2004) (en banc) ("But to be constitutionally problematic, the material must have been deliberately or recklessly omitted and must have *undermined* the showing of probable cause."). Defendant has not argued that Detective Kile omitted material information.

7

that the First Affidavit was merely unartfully worded and, at worst, could be read to suggest there may have been either one or two informants.

I **FIND** a commonsense reading of the First Affidavit does create a false impression that there were two informants: one addressed in the first and second paragraphs and the other addressed in the third and fourth paragraphs of the First Affidavit. Contrary to Defendant's arguments, however, there is no actual, affirmative *false statement* in the First Affidavit.

Regarding the false impression created, Defendant has submitted no argument or authority to support any claim that a false impression is the equivalent of a false affirmative statement.[6] Even if the creation of a false impression were considered sufficient, however, Defendant has made no showing that any false impression was created knowingly and intentionally or with reckless disregard for the truth. *See Franks*, 438 U.S. at 155-56; *United States v. Sims*, 508 F. App'x 452, 459 (6th Cir. 2012) (holding a *Franks* hearing was not required even if some of the statements in the agent's affidavit were misleading, because defendant had not shown the agent "knowingly and intentionally" made a false statement); *United States v. Green*, 572 F. App'x 438, 443 (6th Cir. 2014) (holding that statements resulting from negligence or mistake do not entitle a defendant to a *Franks* hearing); *United States v. Brown*, 732 F.3d 569, 575 (6th Cir. 2013) (finding no substantial preliminary showing where defendant "proffered no evidence" that an allegedly false statement was made intentionally or with reckless disregard for the truth).

Moreover, even if the Court were to find a false impression was created knowingly and intentionally or with reckless disregard for the truth in this case and, as a result, were to strike the

---

[6] As previously noted, Defendant has not argued there was a material omission in the First Affidavit

8

third and fourth paragraphs from the First Affidavit, the remaining first and second paragraphs of the First Affidavit nevertheless support a finding of probable cause, as discussed in the following section. *See United States v. Poulsen*, 655 F.3d 492, 504-05 (6th Cir. 2011) (holding that even if statements in the affidavit are false, "a *Franks* hearing is warranted" only "[i]f, when the alleged false statement is put aside, the affidavit no longer provides the court with probable cause.") Therefore, I **RECOMMEND** that Defendant's request for a *Franks* hearing be denied.

### 2. Probable Cause in the First Affidavit

Excluding any consideration of the third and fourth paragraphs of the First Affidavit, the first paragraph of the First Affidavit states that a previously utilized confidential source, who had cooperated with law enforcement in the past and whose cooperation had led to arrests and convictions of persons for drug crimes, provided information about and made purchases of controlled substances from Defendant at his residence. The second paragraph states the purchases were made from Defendant on January 18 and 19, 2010. Defendant's argument that these two paragraphs provide inadequate probable cause because the reliability of the informant is not detailed or corroborated fails under applicable law. In *Greene*, the Sixth Circuit upheld a search warrant where a police officer/affiant averred the confidential informant had assisted law enforcement officials in the past with information that resulted in felony arrests. *Greene*, 250 F.3d at 480. In *Brown*, the Sixth Circuit upheld a search warrant where a confidential informant known to the officer to be reliable provided first-hand, detailed observations of drugs and what appeared to be the defendant selling drugs at the defendant's home without corroboration of the confidential informant's observations. *Brown*, 732 F.3d at 574.

Based on a totality-of-the-circumstances review, a result similar to *Brown* and *Greene* is reached here. Detective Kile, as the affiant, stated he personally obtained information from a

9

confidential source. Detective Kile also stated the confidential source had previously cooperated with law enforcement and his or her cooperation had resulted in arrests and convictions of persons for the possession, sale, and distribution of various types of controlled substances. Detective Kile also stated the confidential source had recently covertly purchased oxycodone from Defendant at Defendant's house. Under *Greene* and *Brown* and the cases they cite, this is sufficient to establish that the confidential source had given accurate information in the past and, thus, that the source was reliable without further police corroboration.

Contrary to Defendant's unsupported argument, it was not necessary for Detective Kile to provide details about the extent of the confidential source's past provision of information. While Defendant complains the statement of reliability was merely boiler-plate, he has submitted no proof, or even an allegation, that the so-called boiler plate language was in any way false.

A reasonable reading of the first and second paragraphs shows a source, who had been proven to be reliable in the past, provided information and intelligence about, and made purchases of controlled substances from, Defendant at Defendant's residence within 72 hours of the application for the First Warrant. Reviewing the First Affidavit in a commonsense manner, with the required deference, under a totality-of-the-circumstances standard, I **FIND** the first two paragraphs of the First Affidavit provide a substantial basis for the issuing judge to have reasonably believed a search of the residence would uncover evidence of wrongdoing at the place to be searched.[7]

---

[7] Given this finding, it is not necessary with respect to the First Affidavit to address the parties' conflicting arguments about the good-faith exception established in *United States v. Leon*, 468 U.S. 897 (1984), and its progeny.

### 3. Computer Search

The First Warrant authorized a search of "devices, records, computers and computer storage discs, to include the seizure of computers" "adapted and used for the purpose of producing, packaging, dispensing, delivering, or obtaining controlled substances, or recording transactions involving controlled substances, or control over the premises to be searched . . . ." [Doc. 20-1 at Page ID # 176]. From all indications, the child pornography seized during the execution of the First Warrant was observed "in plain view"[8] in the course of the computer search for drug related evidence.[9]

According to the Second Affidavit, a review of Defendant's computer files for evidence of drug crimes during the execution of the First Warrant led to the discovery of a CD folder containing twenty-one (21) images and a video of what was thought to be child pornography. While searching for evidence of child pornography would have been outside the properly authorized scope of the First Warrant, Defendant does not appear to challenge that Detective

---

[8] The plain view doctrine permits an officer to seize evidence outside a warrant's authorization without violating an individual's Fourth Amendment rights if, pursuant to a valid warrant, 1) an officer was entitled to arrive at the place from which the evidence could be plainly viewed; 2) the incriminating character of the seized evidence was "immediately apparent;" and 3) the officer had a lawful right of access to the object. *Horton v. California*, 496 U.S. 128, 136-37 (1990). A typical example of a warrantless seizure saved by the plain view doctrine is where a police officer acting pursuant to a valid warrant enters a house to search for a weapon and seizes a bag of cocaine sitting on a table. In order for the search and seizure not to involve an improper invasion of privacy, the officer must lawfully have been in the place from which the object could be seen in plain view. *Id.* at 136; *see also Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

[9] Addressing the allowable scope of computer searches, the Sixth Circuit has stated that "[s]o long as the computer search is limited to a search for evidence explicitly authorized in the warrant, it is reasonable for the executing officers to open the various types of files located in the computer's hard drive in order to determine whether they contain such evidence." *United States v. Richards*, 659 F.3d 527, 540 (6th Cir. 2011) (quoting *United States v. Roberts*, No. 3:08-CR-175, 2010 WL 234719, at *15 (E.D. Tenn. Jan. 14, 2010)).

Kile stumbled across the alleged child pornography during a search of Defendant's computer for drug-related evidence. Moreover, Defendant does not argue for suppression of the 21 images and the video discovered during the execution of the First Warrant on any basis other than the arguments addressed and rejected above.

Specifically with regard to the discovery of evidence of child pornography during a computer search, the Sixth Circuit has held that such evidence is admissible if an officer accidently stumbles across child pornography during a lawful search of a computer for drug-related evidence. *See United States v. Lucas*, 640 F.3d 168, 179-80 (6th Cir. 2011). Many other courts addressing the issue have found that child pornography seen by accident during a warranted search of a computer for evidence of other crimes is in plain view and admissible. *See e.g.*, *United States v. Mann*, 592 F.3d 779, 782–83 (7th Cir. 2010) (search for particular images authorized a broad search of all files, and child pornography discovered during that search was admissible); *United States v. Highbarger*, 380 F. App'x 127, 131 (3d Cir. 2010) (government's discovery of child pornography on defendant's computer was admissible in proceeding against defendant for violation of federal child pornography laws, when government had obtained a valid search warrant to search defendant's computer for information regarding illegal drug dealings); *United States v. Carey*, 172 F.3d 1268, 1270, 1273 (10th Cir. 1999) (holding court properly did not suppress the first file containing child pornography, which the officer stumbled onto inadvertently during a computer search for drug trafficking evidence, but suppressing the succeeding files as they were not in plain view).

Because the First Affidavit is supported by probable cause, I **FIND** that any alleged child pornography that was properly viewed and seized during the execution of the First Warrant should not be suppressed.

### B. Second Affidavit

Defendant argues the Second Affidavit contains nothing more than conclusory, bare-bones allegations of wrongdoing that are insufficient to support a finding of probable cause for issuance of the Second Warrant and that the good faith exception does not apply.[10] In response, the Government briefly contends there is some legal precedent for finding the description of probable cause to be sufficient, but concedes the probable cause outlined in the Second Affidavit "is very thin." [Doc. 33 at Page ID # 277]. As a result, and citing to a recent decision of this Court, *United States v. Wagner*, No. 4:13-CR-32, 2015 WL 3627007 (E.D. Tenn. June 9, 2015) (Mattice, J.) (accepting and adopting recommendation of a magistrate judge that, although a search warrant affidavit did not establish probable cause, the good faith exception would apply to defeat suppression), the Government concentrates its argument on the good-faith exception to argue against suppression of the vast collection of alleged child pornography seized pursuant to the Second Warrant.

#### 1. Probable Cause in the Second Affidavit

Addressing probable cause first, after careful consideration of the case law and a comprehensive review of the Second Affidavit, I **FIND** the Second Affidavit fails to provide a sufficient description of the images and video viewed during the execution of the First Warrant to support a finding of probable cause for the Second Warrant. In *Wagner*, this Court engaged in a well-reasoned and comprehensive review of the law applicable to probable cause for a search warrant for child pornography, which need not be repeated in full herein. As pertinent, *Wagner*

---

[10] Given my finding that the First Warrant was supported by probable cause, it is not necessary to address Defendant's argument that evidence from the first search was the result of an illegal search and seizure and thus could not properly be used to establish probable cause for the Second Warrant and search under *Wong Sun v. United States*, 371 U.S. 471 (1963).

13

notes it "is well settled" that the judicial officer issuing the warrant need not see the actual images supporting the search warrant application so long as the supporting affidavit contains a sufficient description of the images to determine probable cause. *Id*. at *5 (collecting cases holding that, while it may be the better practice, an issuing judge is not required to view the alleged child pornography images in order to determine probable cause for the issuance of a warrant). As also stated in *Wagner*, the determination of whether an image constitutes child pornography is subjective; thus, probable cause to issue a warrant must be assessed and determined by a judicial officer, not an investigating law enforcement officer. *Id*. at *6, *8 (collecting cases holding that an affiant's asserted opinion that an image of a minor is pornographic is insufficient to support a finding of probable cause).

As the Second Affidavit did not, and was not required to, include any images or video, the issue at hand is whether it contained a sufficiently detailed description of the images and video for the issuing judge to independently determine probable cause. In this matter, there was essentially no description of the images and video other than a statement that they were of children younger than 13. Detective Kile's conclusory opinion that the images and video violated Tenn. Code Ann. § 39-17-1004 is not sufficient to establish probable cause. *See id*. at *8. Accordingly, I **FIND** the Second Affidavit did not provide probable cause for issuance of the Second Warrant.

### 2. Good Faith Exception

The remaining issue is whether exclusion is the appropriate remedy for the judge's error in issuing the Second Warrant without probable cause or whether the good faith exception to the exclusionary rule applies. It is well established that suppression of evidence "is not an automatic consequence of a Fourth Amendment violation." *Herring v. United States*, 555 U.S. 135, 137

(2009). Whether exclusion is appropriately imposed is a separate issue from whether the Fourth Amendment rights of a defendant were violated. *See United States v. Buford*, 632 F.3d 264, 275-76 (6th Cir. 2011) (quoting *Leon*, 468 U.S. at 906). Exclusion applies only where it results in "appreciable deterrence" of police misconduct and the benefits of deterrence outweigh the societal costs of exclusion. *Herring*, 555 U.S. at 700 (quoting *Leon*, 468 U.S. at 909-10).

The Sixth Circuit has summarized the good faith exception to exclusion with respect to a search warrant as follows:

> *United States v. Leon* modified the exclusionary rule so as not to bar from admission evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective. Where an officer's reliance on a warrant is objectively reasonable, the Supreme Court held, no additional deterrent effect will be achieved through the exclusion from evidence of the fruits of that search. However, the good-faith exception is inapposite in four situations: (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Rice*, 478 F.3d 704, 711-12 (6th Cir. 2007) (internal citations and quotation marks omitted) (quoting *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006)).

15

Defendant appears to raise only the second and third/fourth situations here.[11] As a result, the Court must determine whether the good-faith exception is inapposite either because the issuing judge wholly abandoned her judicial role and served merely as a rubber stamp for the police or because the Second Affidavit was nothing more than a "bare bones" affidavit that did not provide the issuing judge with a substantial basis for determining the existence of probable cause.

### a. The rubber stamp exclusion

Defendant "carries the burden of proving that the issuing magistrate acted as a rubber stamp." *United States v. Frazier*, 423 F.3d 526, 537 (6th Cir. 2005) (citing *Rodriguez-Suazo*, 346 F.3d at 649). Such a situation generally involves some allegation of improper conduct by the issuing magistrate indicating a lack of neutrality and detachment. *See Wagner*, 2015 WL 3627007, at *9; *see also Leon*, 468 U.S. at 914 ("the courts must . . . insist that the magistrate *purport to perform* his neutral and detached function and not serve merely as a rubber stamp for the police") (internal quotation marks omitted and emphasis added). In *Frazier*, for example, the defendant asserted the issuing magistrate did not read the affidavit, and instead based his decision to issue the warrant on unsworn testimony. *Frazier*, 423 F.3d at 537. Defendant made only a passing reference to this argument and has proffered no evidence or even an allegation that the issuing judge in this case lacked neutrality and detachment. Defendant asserts only that because there was no probable cause, the judge necessarily acted as a rubber stamp. Under these circumstances, Defendant's argument that the judge acted merely as a rubber stamp to law enforcement fails.

---

[11] The Sixth Circuit has analyzed the third and fourth situations as a single exception to *Leon*'s rule of admissibility where an officer has relied on a warrant issued by a state magistrate. *See Rodriguez-Suazo*, 346 F.3d at 645.

16

### b. The "bare bones" affidavit exclusion

A "bare bones" affidavit in the context of the *Leon* exception is one that contains only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge . . . ." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)). This is a less demanding standard for the government than the standard for establishing probable cause. *Laughton*, 409 F.3d at 748-49 (citing *Carpenter*, 360 F.3d at 595).

The probable cause paragraph of the Second Affidavit states that during the execution of the First Warrant, the affiant viewed a CD folder containing 21 images of a child believed to be younger than 13 years old and a video of another child also believed to be younger than 13, and that said images and video were believed by the affiant to violate Tenn. Code Ann. § 39-17-1004. I **FIND** the Second Affidavit is "bare bones" as it contains only the affiant's suspicions, beliefs or conclusions about the alleged child pornography images, without any underlying factual circumstances other than the age being less than 13.

The Government argues that the Court must consider information known to Detective Kile as part of the totality of the circumstances. The Government relies on a case from the Eighth Circuit to argue that because Detective Kile viewed the 21 images and the video himself and believed them to be in violation of the statute, he acted in good faith in relying on the Second Warrant [Doc. 33 at Page ID # 279 (citing *United States v. Grant*, 490 F.3d 627, 633 (8th Cir. 2007)) ("Although some of this information was omitted from [the officer's] affidavit, [the officer] was aware of the information and his knowledge factors into our assessment of whether his reliance on the warrant was objectively reasonable.")]. Under Sixth Circuit precedent, however, the subjective knowledge of the officer executing the warrant is not sufficient to satisfy

17

a finding of objective good faith. *United States v. Hodson*, 543 F.3d 286, 293 (2008) (citing *Groh v. Ramirez*, 540 U.S. 551, 564 (2004)). Indeed, "[t]he determination whether an objectively reasonable officer would recognize that an affidavit is bare bones is restricted to the information included in the four corners of the affidavit." *United States v. Hollin*, 459 F. App'x 535, 539 (citing *Laughton*, 409 F.3d at 751-52). Accordingly, it is the objective reasonableness of relying on the information included in the Second Warrant that is considered to determine good faith.

The Government cites three other cases in which the good-faith exception applied, but none applies here. First, in *Wagner*, the affidavit went beyond merely stating that the image in question was pornographic by including a few specific details about the image. *Wagner*, 2015 WL 3627007, at *10. The Second Affidavit, however, did not do so.

Similarly, in a Third Circuit case relied on by the Government, the court found the good-faith exception to apply because the affidavit was not "bare bones," but went beyond the affiant's unsupported belief that probable cause existed. *See United States v. Pavulak*, 700 F.3d 651, 664 (3d Cir. 2012). Again, the Second Affidavit in this case is bare bones.

Finally, in a Fourth Circuit case, the court applied the good-faith exception in part based on the affidavit's "specific refer[ence] to the relevant West Virginia statute, which sets out a list of actions that constitute 'sexually explicit conduct,' [so] the kind of conduct that could have been depicted in the images was necessarily limited." *See United States v. Gatherum*, 338 F. App'x 271, 276 & n. 3 (4th Cir. 2009). The Second Affidavit, by contrast, does not refer to Tennessee's definitional statute, which itself includes the necessarily subjective category of "lascivious exhibition" in its definition of "sexual activity." *See Wagner*, 2015 WL 3627007, at *6.

18

I **CONCLUDE** the Second Affidavit "did not provide the magistrate with a substantial basis for determining the existence of probable cause, or . . . was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Rice*, 478 F.3d at 712. While it cannot seriously be argued that the cost of exclusion of child pornography evidence in this case is insignificant, given the applicable precedent and the arguments presented, I am compelled to **CONCLUDE** that the Second Affidavit is so bare bones and lacking in factual detail as to preclude application of the good faith exception. Consequently, I **FIND** the officers who conducted the search could not reasonably rely on the warrant's legitimacy and the *Leon* exception does not apply to evidence obtained as a result of the execution of the Second Warrant. Thus, exclusion of the alleged child pornography evidence obtained during the execution of the Second Warrant is the proper, albeit distasteful, remedy.

### III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[12] that Defendant's motion to suppress [Doc. 20] be **GRANTED IN PART AND DENIED IN PART** as set forth herein. I **RECOMMEND** that Defendant's request to suppress the alleged child pornography that was viewed and seized during the execution of the Second Warrant be **GRANTED.** I further **RECOMMEND** that Defendant's request for a *Franks* hearing and his request to suppress the

---

[12] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation marks and citation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

21 images and one video of alleged child pornography that were viewed during the execution of the First Warrant be **DENIED.**

                                              s/ *Susan K. Lee*
                                              SUSAN K. LEE
                                              UNITED STATES MAGISTRATE JUDGE