UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | Case No. 1:15-cr-32 |
| v. | ) | |
| | ) | Judge Mattice |
| KEITH WARREN | ) | Magistrate Judge Lee |
| | ) | |

## ORDER

Defendant has filed a Motion to Dismiss his Indictment (Doc. 17) and a Motion to Suppress Evidence and Request for a Hearing (Doc. 20). For the reasons stated herein, Defendant's Motion to Dismiss the Indictment (Doc. 17) will be **DENIED**, and Defendant's Motion to Suppress Evidence and Request for a Hearing (Doc. 20) will be **DENIED IN PART** and **GRANTED IN PART**.

### I. MOTION TO DISMISS INDICTMENT

On March 24, 2015, Defendant, Keith Warren, was indicted by a federal grand jury on one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4). (Doc. 1). The indictment alleges that the relevant offense conduct – that is, receiving and possessing visual images depicting a minor engaging in sexually explicit activity using a file-sharing application on his personal computer – occurred in January 2010. (*Id.*).

Defendant responded by filing a Motion to Dismiss the Indictment (Doc. 17), in which he argues that the Government intentionally delayed in seeking the indictment against him. He argues that he has suffered prejudice as a result of the delay in that a material, favorable witness, Heather Shelton Grissom, has since died, prohibiting him

from fully litigating his challenge to the validity of the search warrant executed at his home pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). (*Id.*; Doc. 18 at 2-9). He asserts that the delay in bringing the indictment violated his rights to due process as guaranteed by the Fifth Amendment to the U.S. Constitution. (*Id.*; Doc. 18 at 3-4, 6-7).

In support, Defendant submits a copy of the search warrant issued for his residence, which was signed by a judge on January 21, 2010 and executed and filed with the court on January 25, 2010. (Doc. 17-2). In the statement of facts supporting probable cause for the warrant, the investigating detective averred that he had received information from a confidential source that Defendant had been covertly engaging in the sale of oxycodone, a controlled substance. (*Id.* at 6-8). Counsel also submits his own affidavit, stating that the Government provided discovery including an audio recording of Defendant and a confidential informant, identified as Heather Shelton Grissom, discussing an undercover drug purchase; Defendant also submitted a copy of an online obituary, stating that Heather Shelton Grissom died on May 2, 2015. (Docs. 17-3, 17-4). However, counsel points to the second affidavit of Michael Cohan, averring that he interviewed Heather Shelton Grissom during the course of the investigation and that she advised him that Defendant "was not a drug dealer," and "had never sold her any prescription narcotics." (Doc. 18 at 3; *see* Doc. 24-1).

The Government has responded in opposition to Defendant's Motion. (Doc. 30). The Government argues that Defendant has not demonstrated that his Fifth Amendment due process rights were violated, as he is unable to demonstrate actual prejudice as a result of the delay or that the Government intentionally caused the delay in order to gain a tactical advantage. (*Id.* at 4-5). Specifically, the Government notes that the Sixth Circuit and several other circuits have found that the death of a witness

during a period of delay prior to the indictment does not establish substantial prejudice unless the defendant can demonstrate that exculpatory evidence was lost and cannot be obtained through other means, and argues that Defendant can make no such showing in the instant case, given the nature of the controlled buys made by Shelton Grissom and the other evidence available in the case. (*Id.* at 5-8). The Government further contends that the delay in seeking Defendant's indictment was not intentional or due to any tactical advantage; rather, it asserts that the delay was due, in part, "to the backlog of computers and electronic media that was already at the [Knoxville Police Department] computer crime lab to be analyzed and the extremely large number of images" found on the five computer towers and various media storage devices seized from the search of Defendant's residence. (*Id.* at 2-3; 9-11). As a result, the Government notes that the examination reports of Defendant's computers and storage devices was not fully completed until March 31, 2014. (*Id.* at 3). Thereafter, the images found on the computer towers were sent to the National Center for Missing and Exploited Children "to be compared to the vast list of images of known victims"; the report of the NCMEC was completed on November 21, 2014. (*Id.*). After that report was completed, the file was finally submitted to the United States Attorney's Office, and an indictment was submitted to the grand jury approximately four months later. (*Id.*).

Federal Rule of Criminal Procedure 48 provides in relevant part that a court may dismiss an indictment "if unnecessary delay occurs in . . . presenting a charge to a grand jury[.]" Fed. R. Crim. P. 48(b)(1). "Furthermore, the Supreme Court has stated that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that pre-indictment delay caused substantial prejudice to appellees' rights to a fair trial *and* that the delay was an intentional device to gain

3

tactical advantage over the accused." *United States v. Rogers*, 118 F.3d 466, 474-75 (6th Cir. 1997) (citing *United States v. Marion*, 404 U.S. 307, 324 (1971)) (internal quotation marks and alteration omitted; emphasis added).

Here, the Court finds that Defendant's 2015 indictment was not the result of an "unnecessary delay" warranting dismissal pursuant to Rule 48. Rather, the Government has shown that the delay was out of its control, as it was due to delays in evidence processing at other agencies – namely, the Knoxville Police Department and the NCMEC. Once Defendant's case was turned over to the Government, it acted expeditiously, securing his indictment a mere four months later. For the same reason, the Court finds that Defendant has failed to show that the Government intentionally delayed seeking an indictment to gain a tactical advantage over him. Finding no violation of Rule 48 or the due process guarantees of the Fifth Amendment, the Court will **DENY** Defendant's Motion to Dismiss the Indictment. (Doc. 17).

## II.  MOTION TO SUPPRESS

Defendant has also filed a "Motion to Suppress Evidence and Request for a Hearing Pursuant to *Franks v. Delaware*."[1] (Doc. 20; Doc. 27-1). In his Motion and supporting memorandum, Defendant argues that: (1) the affidavit supporting the January 21, 2010 search warrant ("the first warrant") contained knowingly false statements necessary to support a finding of probable cause, necessitating a probable cause hearing pursuant to *Franks*; (2) without the false statements, the affidavit failed to allege facts sufficient to support a finding of probable cause; (3) the affidavit supporting the January 25, 2010 search warrant ("the second warrant") failed to allege

---

[1] 438 U.S. 154 (1978).

4

facts sufficient to support a finding of probable cause; (4) the affidavit supporting the second warrant was so bare bones that law enforcement could not have reasonably relied on the warrant in good faith. (Doc. 20 at 2-3; Doc. 27). Specifically, Defendant argues that the affidavit supporting the first warrant indicated that two confidential informants provided information but that no second informant actually existed. (Doc. 27 at 9-12). Defendant argues that the statements regarding the second informant were material to a finding of probable cause and that the warrant would not otherwise have issued, due to the lack of detail provided regarding the reliability of the first informant. (*Id.* at 12-15). He further argues that the affidavit supporting the second warrant failed to set forth sufficient details and circumstances to allow the issuing judge to make an independent determination of whether the images constituted child pornography, as it merely stated that the images were of children who appeared to be under the age of 13. (Id. at 17-20). Because of this bare bones description of the images in question, Defendant argues that the good faith exception should not apply to render reliance on the warrant reasonable. (*Id.* at 20-21). Defendant accordingly requests an evidentiary hearing pursuant to *Franks*, as well as suppression of all evidence seized as a result of these two search warrants as fruit of the poisonous tree. (Doc. 20 at 3; Doc. 27 at 16-17, 21-22).

In response, the Government first argues that Defendant has not shown that he is entitled to a *Franks* hearing because he has not demonstrated that the disputed statement was material to the probable cause determination, nor has he shown that the affidavit contained any false statements; at worst, the Government argues that the affidavit was misleading because it could have been read two different ways. (Doc. 33 at 4-6). The Government further contends that the first warrant affidavit contained

5

sufficient information supporting probable cause, even without the details that Defendant argues should have been included, due to the controlled nature of the covert purchases made from Defendant the week before the first search warrant was obtained. (*Id.* at 7-9). As to the second warrant affidavit, the Government concedes that the description of the images was "very thin," and acknowledges that similar affidavits have been found insufficient to establish probable cause; nonetheless, it argues that there is "some support" for finding that the affidavit was sufficient to establish probable cause. (*Id.* at 9-10). Finally, the Government argues that the second warrant affidavit was not so bare bones as to render reliance upon it unreasonable, given that the officer stated that he believed the images to depict minors and violates the law, and thus requests that the Court find that the good faith exception to the warrant requirement is applicable. (*Id.* at 11-12).

In reply, Defendant argues that (1) the Government's factual contention that the covert purchases described in the first warrant were "controlled" is unsupported by the record and not contained in the affidavit supporting the warrant; (2) although the purchases were recorded, that fact was also not included in the warrant affidavit and should not be considered now; (3) Defendant is entitled to a *Franks* hearing because a "plain reading" of the first affidavit describes "two separate confidential informants"; and (4) Defendant has shown that the affiant knowingly or recklessly included false statements because he has demonstrated that the affiant described two separate informants, knowing that only one existed, and argues that he must have done so in an attempt to "bolster the basis for probable cause" in the affidavit. (Doc. 34).

The Court referred Defendant's Motion to Magistrate Judge Susan K. Lee to conduct any necessary evidentiary hearings and to submit a report and recommendation

to the Court pursuant to 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 23). On June 29, 2015, Magistrate Judge Lee filed her report and recommendation, recommending that Defendant's Motion be denied to the extent that it requests a *Franks* hearing and to the extent that it seeks suppression based on the first warrant. (Doc. 35 at 6-12). Specifically, Magistrate Judge Lee noted that, although a commonsense reading of the affidavit created a false impression that there were two informants, "there is no actual affirmative *false statement*" in the affidavit; she further concluded that a false impression is not equivalent to a false statement and that Defendant failed to show that the false impression was created knowingly, intentionally, or recklessly. (*Id.* at 6-7) (emphasis original). She next noted that, even if she agreed with Defendant as to this question, he still would not be entitled to a *Franks* hearing because she concluded that the affidavit would nonetheless have established probable cause. (*Id.* at 8). The magistrate judge specifically found that the first two paragraphs of the affidavit, describing the purchases of oxycodone from Defendant at his residence on January 18 and 19, 2010, provided a substantial basis for a finding of probable cause under the totality of the circumstances. (*Id.* at 9-10). She additionally concluded that the child pornography seized as a result of the first search was properly seized during the execution of the first warrant, as it was observed in "plain view" during the search of the computer for drug related evidence. (*Id.* at 11-12). As to Defendant's argument regarding the second warrant, however, Magistrate Judge Lee recommended that Defendant's Motion be granted in part, finding that the supporting affidavit failed to provide a sufficient description of the images and videos to support a finding of probable cause and that the affidavit was so bare bones as to preclude application of the

good faith exception, and that the evidence seized as a result of that search warrant must accordingly be suppressed. (*Id.* at 13-19).

Both parties have now filed objections to the report and recommendation. (Docs. 36-38). The Government objects only the Magistrate Judge Lee's recommendation that the evidence seized pursuant to the second warrant be suppressed, arguing that the good faith exception should be applied and that exclusion does not further the goals of the Fourth Amendment. (Doc. 36). It argues that the detectives in this case demonstrated a "conscientious effort" to comply with warrant obligations by stopping their search, seeking the assistance of a detective with experience in computer crimes and sexual exploitation of minors, and seeking out a second warrant after discovering evidence of child pornography during the execution of the first warrant. (*Id.* at 4-5). It also argues that the experienced detectives involved viewed the images themselves and believed them to violate Tennessee law, which demonstrates good faith. (*Id.* at 5). Defendant did not file a response to the Government's objections, but stated in his own response that he had no objections to the recommendation that the evidence seized pursuant to the second warrant be suppressed. (Doc. 37 at 2).

Defendant objects to Magistrate Judge Lee's recommendations regarding the first warrant. (Doc. 37). He reiterates his arguments that the first warrant affidavit contained affirmatively false statements that were knowingly, intentionally or recklessly made, and that the first warrant did not contain sufficient evidence of probable cause. (*Id.* at 3-5). He additionally argues that the 21 images and 1 video seized during the search were not discovered in "plain view" because "the files were not immediately recognizable as evidence of illegal activity" and had to "be opened for their nature to be determined"; he thus contends that those files were "manipulated" by law enforcement

8

and thus not in plain view to be exempt from the warrant requirement. (*Id.* at 5-12). Alternatively, he argues that the warrant provision that allowed for a search of "photographs of any persons involved in criminal conduct" did not include a provision allowing for a search of any videos and that there was accordingly no basis for a search or seizure of the video in question. (*Id.* at 13). Finally, he argues that the warrant was overbroad to the extent that it allowed for a search "of each and every file on a computer or disk, without limitation as to the contents of the file." (*Id.* at 13-15).

The Government filed a response to Defendant's objections. (Doc. 38). The Government argues that the officers effecting the search warrant were authorized to open subsequent files after discovering files containing child pornography, as these additional files could have contained drug related evidence described in the warrant. (*Id.* at 1-2). It also argues that the warrant was not overly broad, as it "made clear that the items to be searched were related to the criminal conduct of drug trafficking." (*Id.* at 3-4). The Government argues that the officers acted reasonably under the circumstances and that the United States Court of Appeals for the Sixth Circuit has previously upheld similar actions by law enforcement. (*Id.* at 4-5) (discussing *United States v. Lucas*, 640 F.3d 168, 178-79 (6th Cir. 2011)).

The majority of the parties' objections reiterate arguments made in their initial briefs. Those arguments were fully and properly addressed and analyzed in Magistrate Judge Lee's thorough and well-reasoned report and recommendation.

The Court expressly notes its agreement with Magistrate Judge Lee's rejection of Defendant's request for a *Franks* hearing. The Court specifically agrees with her conclusions that the first warrant affidavit did not contain any false statement; although the affidavit in question is subject to two different interpretations as to whether a single

9

confidential source or multiple informants were involved, the Court finds any false impression to be, at worst, the result of negligence, rather than an attempt to intentionally or recklessly obscure the truth.

The Court also agrees that the child pornography images and video seized as a result of the search from the first warrant was properly seized pursuant to the "plain view" doctrine. The first warrant authorized the officers to search any "devices, records, computer and computer storage discs, to include seizure of computers," in order to retrieve any evidence related to Defendant's "producing, packaging, dispensing, delivering, or obtaining controlled substances, or recording transactions involving controlled substances." The unmarked "homemade" compact discs found at Defendant's residence are undoubtedly covered by the scope of this provision. And, by Defendant's own admission, the files contained on those discs "were not immediately recognizable as evidence of illegal activity" and had to "be opened for their nature to be determined." Thus, necessarily, in order for the officers to complete their search pursuant to the first warrant, they were entitled to open files on the discs in order to determine if they constituted evidence relevant to the warrant. Once the officers opened those files in order to assess whether they were related Defendant's alleged controlled substance activities, the child pornography contained therein was in "plain view" of the executing officers.

For the first time in his objections, Defendant also argues that the warrant was overbroad in granting the officers unfettered rights to search his computer files. However, the warrant did not give the officers unlimited access to Defendant's computer files; rather, as described above, it allowed the officers to search Defendant's records,

10

computers, and computer storage devices for specific evidence related to Defendant's controlled substance offenses.

The Court finds that the warrant was not overbroad as drafted, and was not executed in an overly broad manner. As previously discussed, by Defendant's own admission, the nature of the files that Defendant argues should be suppressed was not readily apparent to the officers conducting the search. The Court notes that most, if not all, criminals will not label evidence of their illicit activities as such. The Court recognizes that the job of law enforcement officers, and this Court, would be much more straightforward if drug dealers would title their files "Drug Sales and Purchases" or the like. However, to hold that officers may only review documents and files expressly labeled as relating to criminal activities would impose a too constrained standard on law enforcement. Simply put, the law must give officers some flexibility in exercising common sense in executing a search warrant of computer files. In this case, unnamed or ambiguously named files were subject to search and review pursuant to the terms of the first warrant, as it would be reasonable to conclude that they contained evidence of Defendant's controlled substance activities. By contrast, the warrant likely would not have authorized the officers to open documents that were clearly identified as being unrelated to Defendant's drug activities, such as those relating to a mortgage or tax returns. Thus, the Court finds here that the officers appropriately exercised their discretion in construing the terms of the first search warrant and in reviewing those files that they reasonably believed could have contained evidence related to Defendant's alleged controlled substance offenses.

For these same reasons, the Court rejects Defendant's argument that the warrant did not authorize law enforcement to review any videos on the storage devices.

Although the warrant expressly mentioned photographs, it did not preclude officers from reviewing videos. The Court finds that it was reasonable for the officers to review any unnamed or ambiguously named videos to determine whether they contained recordings of transactions involving controlled substances.

As to the second warrant, the Court agrees with Magistrate Judge Lee's conclusion that it contained insufficient detail to constitute probable cause; indeed, the Government concedes the validity of this conclusion by expressly stating that it does not object to the report and recommendation on this ground.

Instead, the Government objects only to the conclusion that the good faith exception should not apply because the affidavit supporting the second warrant was so bare bones as to render it unreliable. The second affidavit stated only that the officer "was able to view a folder containing twenty one (21) images of a young child, which your Affiant believes to be younger than thirteen years old," as well as a "video of another child, also younger than thirteen years," all of which the affiant believed "to be in violation of [Tenn. Code Ann.] § 39-17-1004." The referenced statute merely makes it unlawful for a person to possess material "that is obscene" and/or "that includes a minor engaged in: (A) Sexual activity; or (B) Simulated sexual activity that is patently offensive." Tenn. Code Ann. § 39-17-1004(a)(1), (b)(1). As aptly noted by the magistrate judge, the statute does not define "sexual activity" or "simulated sexual activity," terms which are certainly subject to various interpretations and applications.

Without any details regarding the images and video viewed by the officer, the warrant affidavit included only the officer's subjective suspicions and beliefs – he believed the children to be younger than 13, and he believed that the images were obscene or depicted a minor engaged in sexual activity or offensive simulated sexual

12

activity.  Indeed, the only "fact" in the affidavit relating to these depictions that is not subjective is that the officer viewed them himself.  Thus, the Court must conclude that the second warrant affidavit was so bare bones and lacking in probable cause that official reliance upon it was unreasonable, and it agrees with the report and recommendation of the Magistrate Judge and concludes that the good faith exception cannot be applied in this case.

The Court also agrees with the magistrate judge that exclusion is a "distasteful" remedy in a case such as this, where a large number of unlawful images was seized as a result of this second affidavit, and where law enforcement exercised care in suspending its search and seeking out a second warrant after initially discovering evidence of child pornography, which was not included in the scope of the first warrant.  But, despite the good faith actions of the officers in seeking out a second warrant, the Court cannot find that their reliance upon the deficient second warrant was reasonable.  Although the officers took care to ensure that they did not exceed the scope of the first warrant, they did not take care to ensure that the affidavit supporting the second warrant contained sufficient detail to constitute probable cause.  Thus, while the officers may be applauded for their restraint and caution in the first instance, the Court must nonetheless utilize the exclusionary rule to "instill in those particular investigating officers, or their future counterparts, a greater degree of care" with respect to warrant affidavits in subsequent child pornography cases.  *See, e.g.*, *United States v. Leon*, 468 U.S. 897, 919 (1984) (quoting *United States v. Peltier*, 422 U.S. 531, 539 (1975)).

13

Case 1:15-cr-00032-HSM-SKL   Document 39   Filed 01/13/16   Page 13 of 14   PageID #: 354

### III. CONCLUSION

Accordingly, and for the reasons discussed herein,

- The Court hereby **DENIES** Defendant's Motion to Dismiss the indictment (Doc. 17);
- The Court hereby **ACCEPTS** and **ADOPTS BY REFERENCE** the analysis and conclusions set forth in Magistrate Judge Lee's report and recommendation (Doc. 35);
- The parties objections to the report and recommendation are hereby **OVERRULED**;
- The Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Suppress Evidence and Request for a Hearing (Doc. 20);
- The Motion (Doc. 20) is **DENIED** to the extent that it requests a *Franks* hearing and to the extent that it seeks suppression of the evidence seized as a result of the first search warrant;
- The Motion (Doc. 20) is **GRANTED** to the extent that it seeks suppression of the evidence seized as a result of the second search warrant.

**SO ORDERED** this 13th day of January, 2016.

*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE